IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

LENIN LORA, et al.

:

v.                                    :    Civil Action No. DKC 16-4002

:

LEDO PIZZA SYSTEM, INC.

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case are: (1) a motion to dismiss filed by Defendant Ledo Pizza Systems, Inc. (ECF No. 5); (2) a motion to dismiss filed by Defendants PV Shah, Trupti Prakash Shah, and Annapurna, Inc. (collectively, the "Owings Mills Defendants") (ECF No. 7); and (3) a motion for leave to amend filed by Plaintiffs Lenin Lora and Jazmyn Miller ("Plaintiffs") (ECF No. 21). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for leave to amend will be granted, and the motions to dismiss will be granted in part and denied in part.

I.   **Background**

A.   **Factual Background**[1]

Defendant Ledo Pizza Systems, Inc. ("Ledo") is a corporation that franchises Ledo's Pizza restaurants. (ECF No.

---

[1] Unless otherwise noted, the facts outlined here are set forth in the amended complaint and construed in the light most favorable to Plaintiffs.

21-2 ¶ 12).   Defendants PV Shah and Trupti Prakash Shah ("the Shahs") own and operate Annapurna Incorporated ("Annapurna"). (*Id.* ¶ 16).   Annapurna operates a Ledo's Pizza franchise in Owings Mills, Maryland (the "Owings Mills Store"). (*Id.* ¶ 13).

In 2008, Mr. Lora began working at a Ledo's Pizza restaurant in Colesville, Maryland. (*Id.* ¶ 18).   After Mr. Lora worked at the Colesville location for years and was promoted to the role of the general manager, he eventually accepted a job with another employer in early 2016. (*Id.* ¶¶ 18-19).   Shortly thereafter, at the recommendation of Ledo President James Beall, Annapurna hired Mr. Lora as the general manager of the Owings Mills Store on March 14, 2016. (*Id.* ¶¶ 21-22).   Later that month, Mr. Lora met with the Shahs and Damon Richards, a corporate Ledo employee, to ask if he could hire Ms. Miller as a bartender at the Owings Mills Store. (*Id.* ¶ 26).   Mr. Lora and Ms. Miller were in a romantic relationship, which he disclosed to Defendants before hiring her. (*Id.* ¶¶ 26-28).

Even though Mr. Richards was a Ledo employee, he worked occasionally at the Owings Mills Store. (*Id.* ¶ 24).   Mr. Richards directed Mr. Lora as to which items to stock in the bar, prepared inventory lists, and provided training, consultation, and operational support. (*Id.*).   Mr. Richards also required that Mr. Lora provide him with daily and weekly reports on the status of the Owings Mills Store for Ledo.

(*Id.*).   Plaintiffs allege that Mr. Richards also hired at least one server at the Owings Mills Store, and that he set the work schedules for Mr. Lora and his assistant.  (*Id.* ¶ 24).

In March 2016, Mr. Lora hired 64-year-old Jacki Gray as a bartender for the Owings Mills Store. (*Id.* ¶ 29).  Mr. Richards told Mr. Lora that Ms. Gray was "too old" and "grandma like," suggested that she would not be able to make and serve drinks at a fast pace, and ordered Mr. Lora to fire her.  (*Id.* ¶¶ 31-32). When Mr. Lora told Mr. Richards that he could not fire her because of her age, Mr. Richards told Mr. Lora that he would "regret it" if he did not fire her.  (*Id.* ¶ 34).

Around the same time, Mr. Lora began processing payroll for the Owings Mills Store and noticed several issues.  First, he discovered that some employees were being paid less than minimum wage.  (*Id.* ¶ 35).  Mr. Lora informed Trupti Prakash Shah that the wages were illegally low; she told him that she would correct the wages in Annapurna's payroll system but never made the correction.  (*Id.* ¶¶ 36-40, 49).  Second, Ms. Shah reprimanded Mr. Lora for properly paying employees increased amounts for overtime work.  (*Id.* ¶¶ 45-46).  Third, Mr. Lora discovered that one employee at the Owings Mills Store was an undocumented worker who was being paid outside of Annapurna's normal payroll.  (*Id.* ¶¶ 41-43).  When Mr. Lora raised concerns about this practice with Ms. Shah and Mr. Richards, Mr. Richards

3

told him to "do the best you can," and Ms. Shah continued to pay the undocumented worker. (*Id.* ¶ 44).

At the beginning of June, the Shahs eliminated Mr. Lora's payroll responsibilities, began processing payroll exclusively on their own, and resumed underpaying Annapurna's employees. (*Id.* ¶¶ 48-49). Because Mr. Lora had informed them of Annapurna's wage violations, employees in the Owings Mills Store confronted the Shahs after receiving their reduced paychecks on June 10. (*Id.* ¶ 50). On June 16, Mr. Lora complained once again about the undocumented worker, this time to PV Shah. (*Id.* ¶ 51). On June 17, the day after making this complaint, Mr. Shah and Mr. Richards told Mr. Lora he was being fired because of the poor performance of the Owings Mills Store. (*Id.* ¶¶ 52-53). When Ms. Miller called two days later to ask for her shift schedule for the week, Ms. Shah told Ms. Miller that "Corporate" had told her not to put Mr. Lora "or his girlfriend" on the schedule, effectively terminating Ms. Miller's employment at the Owings Mills Store. (*Id.* ¶¶ 55-56). Both Plaintiffs were underpaid in their final paychecks. (*Id.* ¶¶ 57-59). After firing Plaintiffs, the Shahs and Mr. Richards told third parties, including Mr. Beall, a food safety inspector, and the other employees at the Owings Mills Store, that Mr. Lora was a "bad manager," that he "did not care about the store," and that he had been stealing from the restaurant. (*Id.* ¶ 61).

## B.   Procedural History

Plaintiffs each filed charges of discrimination with the United States Equal Employment Opportunity Commission in September 2016.   (ECF No. 21-2 ¶¶ 5-8).   On December 15, Plaintiffs filed the instant suit.   (ECF No. 1).   In their original complaint, they alleged that: Defendants fired each of them in retaliation for Mr. Lora raising wage issues, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Counts I and II); Defendants fired each of them in retaliation for Mr. Lora refusing to fire Ms. Gray because of her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* (Counts III and IV); Defendants defamed Mr. Lora after he was fired (Count V); Defendants fired Mr. Lora because he complained about their unfair wage practices, in violation of public policy and thus constituting an abusive discharge (Count VI); and the Owings Mills Defendants intentionally underpaid each of them on their last paychecks constituting both a failure to pay wages and untimely payment of wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Empl. § 3-501 *et seq.*, (Counts VII, VIII, IX, and X).   (ECF No. 1 ¶¶ 61-121).

Ledo filed a motion to dismiss all of the claims against it on January 12, 2017.   (ECF No. 5).   That same day, the Owings Mills Defendants filed a partial motion to dismiss as to the

Shahs for Counts III and IV, and as to all three Owings Mills Defendants for Counts V and VI.  (ECF No. 7).  On February 9, Plaintiffs filed responses in opposition to each motion and a motion to amend their complaint.  (ECF Nos. 19-21).  The Owings Mills Defendants consented to Plaintiffs' motion to amend, but Ledo did not.  (ECF No. 21).  On March 2, Ledo responded in opposition the Plaintiffs' motion to amend and also filed a reply to its motion to dismiss.  (ECF Nos. 25; 26).

## II.  Plaintiffs' Motion to Amend

### A.  Standard of Review

A party may amend its pleading once as a matter of course within twenty-one days after serving it or within twenty-one days after service of a motion under Fed.R.Civ.P. 12(b), whichever is earlier.  Fed.R.Civ.P. 15(a)(1).  When the right to amend as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P.  15(a)(2).  Whether to grant leave to amend is a matter left to the discretion of the district court, *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011), though courts should "freely give leave when justice so requires," Fed.R.Civ.P. 15(a)(2).  Denial of leave to amend is appropriate "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."

6

*Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

### B.  Analysis

The Owings Mills Defendants have consented to Plaintiffs' motion to amend.  (ECF No. 21, at 1).  Ledo filed an opposition to the motion, arguing that Plaintiffs' proposed amendments would be both futile and prejudicial.  (ECF No. 24, at 3).

Leave to amend may be denied as futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules," including federal pleading standards.  *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)); *Oroweat Foods Co.*, 785 F.2d at 510 ("Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." (citations omitted)).  Denial of leave to amend on futility grounds is appropriate if the court, taking as true the allegations of the proposed amended pleading, would be compelled to dismiss the action.  *See Kellogg Brown & Root*, 525 F.3d at 376 (affirming the district court's denial of leave to amend because the "proposed amended complaint does not properly state a claim under Rule 12(b)(6)").  As explained below, the factual allegations in the proposed amended pleading are sufficient to

7

survive a motion to dismiss on several counts.  Accordingly, Plaintiffs' amendment would not be futile.

"Whether an amendment would be prejudicial is a factual determination.  Courts look at the nature of the proposed amendment, the purpose of the amendment, and the time when the amendment was filed." *Equal Rights Ctr. v. Archstone Smith Tr.*, 603 F.Supp.2d 814, 818 (D.Md. 2009) (citing *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc); *Oroweat Foods Co.*, 785 F.2d at 509).  The United States Court of Appeals for the Fourth Circuit has explained that:

> A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [opposing party, and] is offered shortly before or during trial." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

*Laber*, 438 F.3d at 427 (alteration in original).

Ledo contends that "permitting the amendment would unduly prejudice Ledo Pizza System by causing it to defend a complaint that would become a moving target through substantial changes to the causes of action and allegations asserted." (ECF No. 24, at 3).  To be sure, Plaintiffs' modifications are designed to cure defects identified in the motions to dismiss and therefore have created somewhat of a moving target, but such changes are common

to amended complaints. *See Hess v. Gray*, 85 F.R.D. 15, 20 (N.D.Ill. 1979) ("Generally, almost every amendment to a complaint results in some prejudice to the defendant, either in the form of additional counts or new discovery resulting in delay. The test in each case is whether undue prejudice will result."). Here, Plaintiffs provided their amended complaint with their response in opposition to Defendants' motions to dismiss, allowing Ledo to address these new allegations in its reply. Indeed, Ledo has done so. Moreover, this case is in its early stages. Ledo has not yet filed its answer, nor has any discovery been scheduled. Accordingly, Ledo cannot show that amendment would cause undue prejudice, and Plaintiffs' motion to amend will be granted.[2]

"If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion [to dismiss] as being addressed to the amended pleading."

---

[2] Ledo also asks the court to require Plaintiffs to compensate it for the additional costs incurred by Ledo due to Plaintiffs' failure adequately to plead their case in their original complaint. Ledo cites to only one case in which a court imposed such a condition on amendment, and the court in that case emphasized that it was requiring such a payment because of the "special circumstances" of the case. *Firchau v. Diamond Nat'l Corp.*, 345 F.2d 269, 275 (9th Cir. 1965). The circumstances here are far from special; the amendments that Plaintiffs have made here are of the nature quite commonly accepted by courts, and the timing of Plaintiffs' filing did not delay the advancement of the case in any way. Therefore, the court declines to impose any cost conditions on Plaintiffs for their amendment.

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed. 1990), *cited in Ford v. Chiaramonte*, No. DKC-10-0137, 2010 WL 2696699, at *3 n.2 (D.Md. July 6, 2010); *see also Dolgaleva v. Va. Beach City Public. Sch.*, 364 F.App'x 820, 825 (4th Cir. 2010) (accepting an appeal based on a motion to dismiss that preceded an amended complaint where the district court accepted the amended complaint determined that the Defendant would not need to file a new motion to dismiss). As discussed below, Plaintiffs' amended complaint does not cure all of the defects raised by Defendants in their motions to dismiss. Defendants had an opportunity further to argue such issues in their replies, and, in fact, Ledo did so. Therefore, the merits of the motions will be considered.[3]

---

[3] Plaintiffs also argue that the Owings Mills Defendants' motion to dismiss was filed twenty-two days after they were served, and that the motion should therefore be denied as untimely. (ECF No. 20, at 8). The Owings Mills Defendants were served with the original complaint on December 21, 2016, and filed both an answer and their motion to dismiss on January 12, 2017, one day beyond the twenty-one day limit according to Fed.R.Civ.P. 12(a) for filing a responsive pleading or motion under Fed.R.Civ.P. 12(b). Plaintiffs did not file for an entry of default during the one-day delay, and, because Ledo was served one day later than the Owings Mills Defendants, the failure to meet the twenty-one day deadline did not cause any delay in the case. The Fourth Circuit has stated a strong preference for cases to be decided on their merits. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Under such circumstances, denial for untimeliness is not appropriate. *See Tweh v. Green*, No. GLR-12-2360, 2013 WL 6259863, at *2 (D.Md. Dec. 2, 2013) (holding that a delay of

## III. Defendants' Motions to Dismiss

### A.    Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in the complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See*

---

eight months was insufficient to warrant an entry of default where defendants cured by filing a motion to dismiss before plaintiff moved for default, and considering the merits of defendants' untimely motion to dismiss); *United Advert. Agency, Inc. v. Robb*, 391 F.Supp. 626, 631 (M.D.N.C. 1975) ("This is a technical violation of Federal Rule 12(a) since the response was two days late, but this Court has never refused to consider a substantial issue such as was raised by the motion because of a one or two day delinquency in complying with a strictly procedural rule.").

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, unsupported legal allegations need not be accepted.   *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events.   *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.*

**B.   Analysis**

**1.   Plaintiffs' FLSA Claims**

Ledo moves to dismiss Plaintiffs' claims against it in Counts I and II for violations of the FLSA. (ECF No. 5, at 8-12).   In the amended complaint, Plaintiffs allege that Defendants fired Mr. Lora in retaliation for opposing

Defendants' attempts to pay employees at the Owings Mills Store less than minimum wage and less than they were required to pay for overtime.  (ECF No. 21-2 ¶¶ 35-40, 45-47).  They allege that Defendants fired Ms. Miller because of her relationship with Mr. Lora.  (*Id.* ¶ 56).  Ledo contends that it does not qualify as Plaintiffs' employer for FLSA purposes.  (*Id.*).  Plaintiffs do not argue that they worked directly for Ledo, but rather that Ledo, Annapurna, and the Shahs were joint employers at the Owings Mills Store.  (ECF No. 19, at 6).

The FLSA defines an employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  The Supreme Court has noted the "striking breadth" of the FLSA's definitions and stated that an entity may constitute an employer for FLSA purposes even if it is not an employer under other federal statutes.  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).  Even so, "[c]ourts evaluating franchise relationship[s] for joint employment have routinely concluded that a franchisor's expansive control over a franchisee does not create a joint employment relationship" on its own.  *Jacobson v. Comcast Corp.*, 740 F.Supp.2d 683, 690 n.6 (D.Md. 2010) (citing *Singh v. 7-Eleven, Inc.*, No. C-05-04534 RMW, 2007 WL 715488, at *7 (N.D.Cal. Mar. 8, 2007) ("A franchisor must be permitted to

retain such control as is necessary to protect and maintain its trademark, trade name and good will, without the risk of creating an agency relationship with its franchisees.")). *But see Shupe v. DBJ Enters. LLC*, NO. 1:14-CV-308, 2015 WL 790451, at *4 & n.2 (M.D.N.C. Feb. 25, 2015) (noting that facts might later show an insufficient relationship, but denying franchisor's motion to dismiss because the plaintiff had alleged "significant control over day-to-day operations through the 'Guiding Principles' and 'Code of Conduct' that they required all franchisees and franchisee employees to follow"). Rather, the allegations in the amended complaint must show a relationship among the franchisor, the franchisee, and the plaintiff that demonstrates an employment relationship.

In *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 142 (4th Cir. 2017), the Fourth Circuit reiterated that courts must consider "the circumstances of the whole activity" and ask the "fundamental threshold question" of "whether a purported joint employer shares or codetermines the essential terms and conditions of a worker's employment." The court identified six factors that should be considered by courts undertaking this inquiry:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 141-42.

Here, Plaintiffs allege that there were significant ties between Annapurna and Ledo.   Annapurna hired Mr. Lora at the recommendation of Ledo President Mr. Beall.   (ECF No. 21-2 ¶ 21).   Plaintiffs allege that Mr. Richards, a Ledo employee, "controlled and directed" Mr. Lora's work, required Mr. Lora to provide him with daily and weekly reports, told him which items

to stock in the bar, set schedules for employees at the Owings Mills Store, and hired one of the store's bartenders. (*Id.* ¶¶ 24-25). Mr. Lora asked both the Shahs and Mr. Richards whether he could hire Ms. Miller. (*Id.* ¶ 26). The amended complaint alleges that both Mr. Shah and Mr. Richards told Mr. Lora that he was being fired (*id.* ¶ 53), and that Trupti Shah told Ms. Miller that "'Corporate' told her not to put [Mr. Lora or Ms. Miller] on the schedule indicating that [Ms.] Miller was being fired," (*id.* ¶ 56). Plaintiffs also allege that Mr. Richards told Mr. Lora to fire Ms. Gray, and that Mr. Lora would "regret it" if he did not fire her. (*Id.* ¶¶ 32-34). On one hand, this threat indicates that Mr. Richards was not in a position to fire Ms. Gray himself; on the other hand, it indicates that he might have been able to fire Mr. Lora.

Taking these allegations as true, Plaintiffs have adequately pleaded a joint employer relationship. These allegations indicate that Mr. Richards specifically, and Ledo generally, had at least some power to control and supervise workers and to hire, fire, or modify conditions of employment at the Owings Mills Store. The franchisor-franchisee affiliation also suggests a long-lasting relationship between Ledo and Annapurna and at least some degree of control by Ledo over Annapurna. Accordingly, at least the first four factors could possibly weigh in Plaintiffs' favor.

16

Ledo argues in its reply that the amended complaint fails to include any allegations specific to Ms. Miller's employment indicating that Ledo was her joint employer. (ECF No. 26, at 3-5). The amended complaint includes allegations that Ledo was included in the decisions both to hire and to fire her. (ECF No. 21-2 ¶¶ 26, 56). These allegations, along with Plaintiffs' allegations related Mr. Richards's role and relationship with the Owings Mills Store in general, are sufficient at this stage of the litigation. Ledo's motion to dismiss will therefore be denied as to Counts I and II.

### 2. Plaintiffs' ADEA Claims

Ledo next moves to dismiss the claims against it in Counts III and IV under the ADEA. (ECF No. 5, at 12).[4] The ADEA prohibits employers from discriminating against employees or prospective employees because of the individual's age. 29 U.S.C. § 623(a). It also prohibits an employer from retaliating against an employee because he opposes the employer's policy or practice that violates the ADEA. *Id.* § 623(d). "To establish a prima facie case of retaliation [under the ADEA], a plaintiff must demonstrate that: (1) he engaged in protected activity; (2)

---

[4] In the Owings Mills Defendants' motion to dismiss, they argued that the Shahs could not be held individually liable under the ADEA. (ECF No. 7-1, at 3). In the amended complaint, Plaintiffs limited their claims in Counts III and IV to Defendants Ledo and Annapurna. Therefore, Defendants' arguments as to these two counts are no longer before the court.

an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action." *Laber*, 438 F.3d at 432.  Ledo argues that it does not qualify as Plaintiffs' joint employer for ADEA purposes and that Plaintiffs have not adequately pleaded a causal link between the protected activity and the adverse action here. (ECF No. 5, at 12-15).

As noted above, the definition of an employer under the FLSA is more expansive than it is under other federal statutes. *Darden*, 503 U.S. at 326; *Salinas*, 848 F.3d at 143 ("'FLSA cases . . . are not particularly transferrable to Title VII cases' because the FLSA defines 'employee' more broadly than Title VII and a number of other federal labor statutes." (quoting *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414 (4th Cir. 2015))).  Under the ADEA, an employer is any "person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  29 U.S.C. § 630(b). The Fourth Circuit has therefore applied a different test to determine whether two entities qualify as joint employers under the ADEA.  *See Butler*, 793 F.3d at 414.[5]  Specifically, the court

---

[5] *Butler* was an employment discrimination case under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.  793 F.3d at 406.  Title VII requires only fifteen employees to be an employer, but, otherwise, "the

in *Butler* adopted a test that required courts to consider nine factors:

> (1) authority to hire and fire the individual;
>
> (2) day-to-day supervision of the individual, including employee discipline;
>
> (3) whether the putative employer furnishes the equipment used and the place of work;
>
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
>
> (5) the length of time during which the individual has worked for the putative employer;
>
> (6) whether the putative employer provides the individual with formal or informal training;
>
> (7) whether the individual's duties are akin to a regular employee's duties;
>
> (8) whether the individual is assigned solely to the putative employer; and
>
> (9) whether the individual and putative employer intended to enter into an employment relationship

*Butler*, 793 F.3d at 414. The court emphasized that the first three factors are the most important and that no one factor is determinative. *Id.* at 414-15.

---

operative language in ADEA is identical to the operative language in Title VII, so the analysis utilized under either act is interchangeable." *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 220 (4th Cir. 1993) (*citing Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 & n.4 (4th Cir. 1983)).

Considering these factors in conjunction with the same factual allegations noted above, Plaintiffs have sufficiently pleaded their ADEA claims. The allegations in the amended complaint suggest that Ledo, acting through Mr. Richards, may have had control over hiring and firing decisions (the first factor), day-to-day supervision (the second factor), and formal or informal training (the sixth factor). At the motion to dismiss stage, these allegations are adequate.

Ledo also argues that, even if it qualifies as Plaintiffs' employer, Plaintiffs have failed to allege facts demonstrating a causal link between Mr. Lora's protected activity and his termination. (ECF No. 5, at 14). Ledo relies on the theory that "[w]hen there is no direct evidence of discrimination, a causal connection 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" (ECF No. 5, at 14 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2$^d$ Cir. 1988)). As Plaintiffs point out, however, this is not a case in which there is no direct evidence of discrimination. Rather, Plaintiffs allege that Mr. Richards ordered Mr. Lora to fire a bartender at the Owings Mills Store because of her age and told Mr. Lora that he would "regret it" if he failed to fire her. (ECF No. 21-2 ¶¶ 33-34). Construing this language in the light most favorable to Plaintiffs, Mr. Richards' statement

20

could be considered a threat that he would retaliate against Mr. Lora if he did not fire the bartender. Such a threat constitutes direct evidence of discrimination, and Plaintiffs need not rely on the timing of the protected activity and the adverse action to draw an inference of discrimination. *See Patrick v. Ferguson*, No. 1:10-CV-00045, 2011 WL 403429, at *6 n.3 (S.D.Ohio Feb. 3, 2011) (threatening to fire plaintiff if he complained about discrimination is direct evidence of retaliation); *see also Rose v. N.Y.C. Bd. of Educ.*, 257 F.3d 156, 162 ($2^d$ Cir. 2001) (finding direct evidence of discrimination where plaintiff's supervisor had threatened to replace plaintiff with someone "younger and cheaper" on two occasions and later recommended to the school board that she be demoted). Accordingly, Plaintiffs have sufficiently pleaded a causal connection, and Ledo's motion to dismiss will be denied as to Counts III and IV.

### 3. Mr. Lora's Defamation Claim

All Defendants move to dismiss Mr. Lora's defamation claim in Count V. (ECF Nos. 5, at 15-19; 7-1, at 3-4). Defendants move to dismiss under three distinct theories. First, Ledo argues that Mr. Lora has failed to allege necessary details for a defamation claim. (ECF No. 5, at 16). Second, Ledo argues that any defamatory statements made by the Shahs or Mr. Richards cannot be imputed to it. (*Id.* at 17-18). Third, all Defendants

argue that they are protected from suit for the alleged defamatory statements by a qualified privilege extended to employers under Maryland law. (ECF Nos. 5, at 18-19; 7, at 3-4).[6]

Ledo's first argument is that the amended complaint lacks the necessary particularity. To state a claim for defamation in Maryland, a plaintiff must plead the following four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007). Mr. Lora has alleged that the Shahs and Mr. Richards told third parties, including Mr. Beall, a food safety inspector, and the employees at the Owings Mills Store, that Mr. Lora was a "bad manager," that he "did not care about the store," and that he had been stealing from the restaurant. (ECF No. 21-2 ¶ 61). The amended complaint alleges that the Defendants knew their statements were false and that the

---

[6] The court has supplemental jurisdiction over Plaintiffs' state law claims in Counts V through X under 28 U.S.C. § 1367(a). "*Erie* mandates that federal courts apply the substantive laws of the states when exercising diversity or supplemental jurisdiction." *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D.Md. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). None of the parties dispute that Maryland law applies to these claims.

statements caused him reputational and other damages.  (*Id.* ¶¶ 87-90).

Ledo argues, however, that a plaintiff in a defamation suit must plead his claim with more specific details, including the exact content of each defamatory statement, the date on which each statement was made, and by whom and to whom each statement was made.  (ECF No. 5, at 16 (citing *S. Volkwagen, Inc. v. Centrix Fin., LLC*, 357 F.Supp.2d 837, 844 (D.Md. 2005))).  Ledo relies on *Southern Volkswagen*, where the court instructed the plaintiff to provide this detailed information in an amended complaint.  *See S. Volkswagen* 357 F.Supp.2d at 844.  Although the court sought more information in an amended complaint, it had dismissed the complaint for lacking other details that raised jurisdictional issues.  *Id.*  The court did not order this detailed information to meet the general pleading standard, and other courts have noted that *Southern Volkswagen* "is not fairly read to establish a heightened pleading standard for defamation claims or minimum pleading requirements in order to state a claim for defamation."  *Doe v. Johns Hopkins Health Sys. Corp.*, No. TDC-16-1635, 2017 WL 1293568, at *8 (D.Md. Apr. 6, 2017).  Accordingly, Mr. Lora need not provide more detail to survive a motion to dismiss.

Next, Ledo challenges whether any defamatory statements made by Mr. Richards can be imputed to it.  Mr. Lora must rely

on the doctrine of *respondeat superior* to impute any such statements on to Ledo, which requires that Mr. Richards was acting within the scope of his employment when he made any defamatory statements.    Ledo argues that Mr. Lora has not alleged that Mr. Richards was acting in the scope of his employment at the time he made any defamatory statements, and that his claim therefore must be dismissed.    Contrary to Ledo's argument, Mr. Lora's allegations suggest that Mr. Richards represented Ledo in many ways at the Owings Mills Store. Moreover, the alleged defamatory statements – that Mr. Lora was a "bad manager," that "he did not care about the store," and that he was stealing from the restaurant – pertained to Mr. Lora's work at the Owings Mills Store and were made to all business-related parties, namely store employees, Mr. Beall, and a restaurant food inspector.    These allegations, construed in Mr. Lora's favor, suggest that Mr. Richards may have made the defamatory statements "incident to the performance of the duties entrusted to him by the [employer]," *Sawyer v. Humphries*, 322 Md. 247, 255 (1991), and therefore within the scope of his employment.    Mr. Richards may well have been acting to further the interests of Ledo, perhaps in an effort to protect Ledo's reputation, when he made the allegedly defamatory statements. Therefore, Ledo's motion fails on this ground.[7]

---

[7] Ledo also seems to argue that Mr. Lora's claim should be

Finally, all Defendants argue that Mr. Lora's defamation claim is barred because a qualified privilege exists where allegedly defamatory statements are made within the context of the employer-employee relationship. (ECF Nos. 5, at 18-19; 7, at 3-4 (citing *Gen. Motors Corp. v. Piskor*, 277 Md. 165, 172 (1976); *Helfin v. Ulman*, No. 0156, 2016 WL 1360805, at *3 (Md.Ct.Spec.App. Apr. 6, 2016); *Happy 40, Inc. v. Miller*, 63

---

dismissed automatically because he has not specifically pleaded *respondeat superior* liability. Ledo relies on *Colfield v. Safeway Inc.*, No. WDQ-12-3544, 2013 WL 5308278, at *7 (D.Md. Sept. 19, 2013), in which the court held that the plaintiff's defamation claim against an employer failed because he had not pleaded *respondeat superior*. That court cited another case for the proposition that "a plaintiff pursuing a theory of vicarious liability must affirmatively plead such an action." *Id.* at *7 n.23 (citing *G.E. Tignail & Co. Inc. v. Reliance Nat'l Ins. Co.*, 102 F.Supp.2d 300, 307 (D.Md. 2002)). In *G.E. Tignail*, however, the court was considering whether an insurance provision that included a duty to defend required the defendant to pay for the plaintiff's defense in an underlying tort suit; the absence of any mention of vicarious liability in the pleadings prevented the plaintiff's claim in the coverage suit, where the pleadings of the underlying tort suit control.

The circumstances here are not so convoluted, and other courts have found generally that "whether or not the defendant's alleged actions . . . were within the scope of his employment should not [be] decided on a motion to dismiss." *Sawyer*, 322 Md. at 261; *Chinwuba v. Larsen*, 142 Md.App. 327, 370 (2002). Although "courts have placed a higher pleading burden on claimants seeking to avoid the bar of governmental immunity" by claiming that a government actor was acting outside the scope of his employment, *Chinwuba*, 142 Md.App. at 370, no such burden need be applied in the instant case between two private parties. Indeed, in *Colfield* the court also emphasized that the plaintiff had not alleged any facts that gave a reason that the action should be imputed to his employer. Accordingly, Mr. Lora's *respondeat superior* arguments must be considered in light of the factual allegations in the amended complaint, rather than any rigid affirmative pleading requirements.

Md.App. 24, 31 (1985))).   "This privilege applies when the employer makes a statement about a previous employee or when discussing with other employees the circumstances giving rise to the employee's termination." *Helfin*, 2016 WL 1360805, at *3.   A plaintiff can overcome the employer's privilege if he can show actual malice.   *Id.; accord Piskor*, 277 Md. at 172-73; *Montgomery Investigative Servs., Ltd. v. Horne*, 173 Md.App. 193, 208 (2007).   Defendants argue that the allegations in the amended complaint that they "acted intentionally, willfully, recklessly, and/or maliciously" are too conclusory to qualify as pleading actual malice.   (ECF Nos. 5, at 19; 7, at 4).   Such an allegation, "albeit spare, has been held by a court . . . to constitute well-pleaded allegations of malice." *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at * 4 (D.Md. Apr. 9, 2012); *see also S. Volkwagen*, 357 F.Supp.2d at 843-44 ("An averment of knowledge that the statement was false is a sufficient allegation of actual malice.") (citing *Samuels v. Tschechtelin*, 135 Md.App. 483, 550-54 (2000)); Restatement (Second) of Torts § 580B).   The allegations in the amended complaint are thus sufficiently pleaded to survive a motion to dismiss.   None of Defendants' arguments warrant dismissal of Mr. Lora's defamation claim, and their motions to dismiss will be denied as to Count V.

### 4.   Mr. Lora's Abusive Discharge Claim

All Defendants also move to dismiss Mr. Lora's abusive discharge claim in Count VI.   (ECF Nos. 5, at 19-21; 7-1, at 4-5).   A claim for abusive discharge exists under Maryland common law when "the motivation for the discharge contravenes some clear mandate of public policy."   *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981).   However, "[e]ven where statutory and regulatory provisions supply a source of a public policy in the analysis of a wrongful discharge claim, if those provisions already provide an adequate and appropriate civil remedy for the wrongful discharge[,] the claim will fail."   *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 423 (2003).   In Plaintiffs' motion to amend, Mr. Lora asserts that he "identified the wrong public policy on which the abusive discharge claim is premised" and has "cure[d] this error" by asserting a new public policy. (ECF No. 21-1, at 3).   The amended Count VI relies on 8 U.S.C. § 1324a, which makes it illegal "to hire, or to recruit or refer for a fee, for employment [a known] unauthorized alien."   As held by the Maryland Court of Special Appeals, however, a claim for abusive discharge cannot stand on § 1324a grounds because the statute itself provides for civil remedies.   *See Magee v. DanSources Tech. Servs., Inc.*, 137 Md.App. 527, 571 (2001) (citing 8 U.S.C. §§ 1324b(a)(5), 1324b(b), 1324b(d)(2)). Accordingly, even Plaintiffs' amended complaint fails to

sufficiently plead a viable abusive discharge claim, and Defendants' motions will be granted as to Count VI.

## IV.  Conclusion

For the foregoing reasons, the motion for leave to amend filed by Plaintiffs will be granted, and the motions to dismiss filed by Defendants will be granted in part and denied in part. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
